UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **NEWPORT CREATIVE COMMUNICATIONS, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**AMERICAN DIABETES ASSOCIATION,**<br><br>**Defendant.** | Civil Action No.:<br>04-10264-PBS |

## DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND DEFENDANT'S COUNTERCLAIMS

### ANSWER

Defendant American Diabetes Association (hereinafter "Defendant"), by and through its undersigned attorneys, for its Answer to Plaintiff Newport Creative Communications, Inc.'s Complaint states as follows:

I.   PRELIMINARY STATEMENT OF CLAIMS

   1.   Defendant admits that Newport Creative Communications, Inc. (hereinafter "Plaintiff") brought an action to collect $336,838.68 allegedly due for services rendered on breach of contract and account annexed theories and admits that Plaintiff has brought a claim under M.G.L. c. 93A, but Defendant denies that there is any merit to Plaintiff's claims and denies that Plaintiff is entitled to damages, attorneys fees and/or costs. Defendant further admits that Defendant and Plaintiff entered into a written agreement (hereinafter "Agreement") but

- 2 -

denies that Exhibit 1 to Plaintiff's Complaint contains a true copy of the Agreement. Defendant further admits that Defendant notified Plaintiff in late March 2003 and early April 2003 that it would terminate the Agreement effective June 30, 2003. Defendant further admits that Plaintiff continued to perform certain direct mail services requested by Defendant after Defendant notified Plaintiff that Defendant was terminating the Agreement and up to the time of the termination of the Agreement itself. Defendant further admits that Plaintiff rendered various invoices for its services and admits that some or all of these invoices are attached as Exhibit 2 to Plaintiff's Complaint; Defendant denies, however, that such invoices were complete and/or accurate. Defendant further admits that paragraph 6 of the Agreement indicates that "The ADA shall pay to NCC as sole compensation for its services the amounts set forth in Schedule A. Payment shall be made 30 days from date of ADA's receipt of a final and correct invoice." Defendant further denies that Defendant has not claimed that any of Plaintiff's invoices are incorrect, but Defendant admits that Defendant has refused to pay certain of Plaintiff's invoices. Defendant admits that Defendant sent Plaintiff letters dated December 29, 2003 and January 5, 2004. Defendant further admits that Defendant's letter objected to overcharges by Plaintiff and demanded reimbursement. Defendant denies all remaining allegations in Paragraph 1 of Plaintiff's Complaint.

II.     JURISDICTION

2.     This Paragraph contains conclusions of law to which no response is required.

III.    PARTIES

3.     Defendant is without sufficient knowledge to admit or deny the allegations at Paragraph 3 of Plaintiff's Complaint and, on that basis, denies all such allegations.

4.     Defendant admits that it is a foreign non-profit corporation and admits all other allegations at Paragraph 4 of Plaintiff's Complaint.

IV.    STATEMENT OF FACTS

5.     Defendant denies that Exhibit 1 to Plaintiff's Complaint contains a true copy of the March 25, 2002 Agreement entered into between Plaintiff and Defendant. Defendant admits all remaining allegations in Paragraph 5 of Plaintiff's Complaint.

6.     Defendant admits all allegations in Paragraph 6 of Plaintiff's Complaint.

7.     Defendant denies that Defendant unilaterally selected when the direct mailings would occur. Defendant admits that Plaintiff met with Defendant before each direct mailing to plan the mailings and Defendant admits that Plaintiff prepared written strategic plans for Defendant's approval before each mailing.

8.     Defendant admits that Plaintiff submitted invoices for service on Defendant's direct mailings, but Defendant denies that said invoices complied with the Agreement entered into between the parties and further denies that said invoices accurately reflected services rendered by Plaintiff.

9.     Defendant admits that paragraph 6 of the Agreement indicates that "The ADA shall pay to NCC as sole compensation for its services the amounts set forth in Schedule A. Payment shall be made 30 days from date of ADA's receipt of a final and correct invoice." Defendant denies all remaining allegations in Paragraph 9 of Plaintiff's Complaint.

10.    Defendant is without sufficient knowledge to admit or deny whether Plaintiff "estimated" the cost of postage or the approximate number of mail pieces, and on that basis denies all such allegations. Defendant admits that Plaintiff periodically "credited" Defendant,

but Defendant is without sufficient knowledge to admit or deny whether Plaintiff's "credits" were for unused postage and on that basis denies all such allegations.

11. Defendant admits that on March 24, 2003 (and on other dates in March and April 2003) Defendant gave notice to Plaintiff that Defendant was terminating the Agreement effective June 30, 2003. Defendant further admits that pursuant to paragraph 2 of the Agreement, "ADA may terminate [the] Agreement upon 60 days written notice ..."

12. Defendant admits that Plaintiff performed certain requested direct mail services between March 24, 2003 and June 30, 2003, but Defendant denies that these services were pursuant to the terms of the Agreement. Defendant denies that Plaintiff's invoices accurately reflected the services rendered by Plaintiff and/or were in compliance with the Agreement between the parties. Defendant denies all remaining allegations in Paragraph 12 of Plaintiff's Complaint.

13. Defendant admits that payment on certain of Plaintiff's invoices was delayed. Defendant denies that Plaintiff's invoices – either before or after notification of the termination of the Agreement – accurately reflected the services rendered by Plaintiff and/or reflected work in compliance with the Agreement between the parties, and therefore denies that there was any improper delay in payment of any invoices.

14. Defendant admits that payment on certain of Plaintiff's invoices was delayed. Defendant further admits that Plaintiff was told that Plaintiff's invoices were on Ms. Bennett's desk and about problems (including lost invoices) with Defendant's Oracle accounting/invoice processing system. Defendant denies that Plaintiff's March and April 2003 invoices accurately reflected the services rendered by Plaintiff and/or reflected work in compliance with the Agreement between the parties, and therefore denies that there was any amount "outstanding" to

Plaintiff. Defendant admits that Plaintiff made requests for payment of its "invoices." Defendant denies all remaining allegations in Paragraph 14 of Plaintiff's Complaint.

15. Defendant admits that Plaintiff correctly quotes portions of an April 16, 2003 e-mail between Defendant's employees Patty Ruch and Lamont Wray, but denies all remaining allegations in Paragraph 15 of Plaintiff's Complaint.

16. Defendant admits that payment on certain of Plaintiff's invoices was delayed. Defendant denies that Plaintiff's invoices accurately reflected work performed by Plaintiff and/or work in compliance with the Agreement between the parties and therefore denies that there was any improper delay in payment of any of Plaintiff's invoices. Defendant further admits that in May and June 2003 Defendant requested that Plaintiff perform certain direct mail services in May and June 2003. Defendant further admits that Plaintiff requested payment of Plaintiff's invoices. Defendant further admits that approximately 1,000,000 pieces of direct mail were scheduled to mail in early June 2003. Defendant further admits that it stopped payment on a check sent to Plaintiff. Defendant further admits that it subsequently wired money to Plaintiff's account. Defendant denies all remaining allegations in Paragraph 16 of Plaintiff's Complaint.

17. Defendant admits that payment on certain of Plaintiff's invoices was delayed. Defendant denies that Plaintiff's invoices accurately reflected work performed by Plaintiff, reflected work in compliance with the Agreement between the parties, and/or were final and correct and therefore denies that there was any improper delay in payment of any of Plaintiff's "invoices."

18. Defendant admits that Defendant, at times, demanded postal form 3602s in connection with Plaintiff's mailings. Defendant further admits that postal form 3602s can be used to determine the number of pieces in a direct mailing and therefore can be used to check the

accuracy of a direct mail invoice. Defendant denies all remaining allegations in paragraph 18 of Plaintiff's Complaint.

19.    Defendant admits that Plaintiff provided certain postal form 3602s. Defendant further admits that the postal form 3602s verified – to within an acceptable margin of error – that Plaintiff's invoices correctly described the number of direct mail pieces that Plaintiff mailed. Defendant denies all remaining allegations in Paragraph 19 of Plaintiff's Complaint.

20.    Defendant admits that Defendant has claimed that Plaintiff's invoices, including invoices paid in full by Defendant, do not accurately reflect the work performed by Plaintiff and admits that Defendant has claimed that Plaintiff's work and/or invoices were not in compliance with the Agreement. Defendant further admits that Defendant has claimed that Plaintiff is obligated to reimburse Defendant for money paid by Defendant on such invoices. Defendant denies all remaining allegations in Paragraph 20 of Plaintiff's Complaint.

V.    <u>STATEMENT OF CLAIMS</u>

Count I.    <u>Breach of Contract</u>

21.    Defendant hereby realleges and reincorporates Paragraphs 1 through 20 above as though set forth herein.

22.    Defendant denies all allegations at Paragraph 22 of Plaintiff's Complaint.

Count II.    <u>Account Annexed</u>

23.    Defendant hereby realleges and reincorporates Paragraphs 1 through 22 above as though set forth herein.

24.    Defendant denies all allegations at Paragraph 24 of Plaintiff's Complaint.

...

<u>Count III.</u>         <u>General Laws c. 93A, section 11</u>

25.    Defendant hereby realleges and reincorporates Paragraphs 1 through 24 above as though set forth herein.

26.    Paragraph 26 of Plaintiff's Complaint contains conclusions of law to which no response is required.

27.    Defendant denies all allegations at Paragraph 27 of Plaintiff's Complaint and all allegations in the subsequent "prayers for relief" paragraph immediately following paragraph 27.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, for failure to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, because Plaintiff's performance was not satisfactory and not in a workman like manner.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, because Plaintiff failed to perform condition(s) precedent to Defendant's performance.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, by the doctrine of estoppel and/or equitable estoppel.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, by the doctrine of unclean hands.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, by the doctrine of fraud.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, by the doctrine of mutual mistake and/or unilateral mistake.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, because Defendant is not engaged in trade or commerce.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, because Defendant's actions were not unfair or deceptive and/or Plaintiff's damages were not proximately caused by any unfair or deceptive actions.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, because Plaintiff refused to accept a reasonable settlement offer.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, because the transactions at issue did not occur primarily or substantially in Massachusetts.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, by the doctrine of indemnity.

### THIRTEENTH AFFIRMATIVE DEFENSE

Defendant reserves the right to amend this Answer and add additional affirmative defenses as warranted by additional investigation and discovery on this case.

## FIRST COUNTERCLAIM

## BREACH OF CONTRACT

### PARTIES AND JURISDICTION

28.   Plaintiff Newport Creative Communications, Inc. (hereinafter "Plaintiff") is a California corporation with its principal place of business in Duxbury, Massachusetts.

29.   Defendant American Diabetes Association (hereinafter "Defendant") is an Ohio corporation with its principal place of business in Alexandria, Virginia.

30.   The amount in controversy in this action exceeds $75,000.00.

31.   Therefore, this Court has original jurisdiction pursuant to 28 U.S.C. §1332.

### FACTUAL BACKGROUND

32.   Plaintiff is engaged in trade or commerce, as a company in the business of providing direct mail services.

33.   Defendant is a national, non-profit health care organization dedicated to the prevention of diabetes, the search for a cure to the disease, and improvement of the lives of people suffering from the disease.

34.   To accomplish its mission to prevent and cure diabetes and to improve the lives of people suffering from diabetes, Defendant conducts direct mail campaigns to solicit new donors to Defendant's organization and to solicit renewed donations from Defendant's contributor base.

35.   Plaintiff and Defendant entered into a written agreement effective March 25, 2002 (hereinafter "Agreement"), regarding Plaintiff's provision of direct mail fundraising services to Defendant. A true and correct copy of this Agreement, including schedule A thereto, is attached hereto as Exhibit 1.

36. The Agreement provided at paragraph 1 that "[Plaintiff] shall provide direct mail services in a professional, competent, high quality, and timely manner that meet or exceed industry standards."

37. The Agreement provided at paragraph 6 that "[Defendant] shall pay [Plaintiff] as sole compensation for its services the amounts set forth in Schedule A. Payment shall be made 30 days from date of [Defendant's] receipt of a final and correct invoice."

38. The Agreement provided at paragraph 10 that "[Plaintiff] agrees to indemnify, defend and hold harmless [Defendant], its officers, directors, employees, and agents, from any and all claims, losses, damages, liabilities, judgments, or settlements, including reasonable attorneys' fees, costs and other expenses, incurred by [Defendant] on account of any act, omission or breach of this Agreement."

39. The Agreement provided that, in addition to other revenue, Plaintiff would be paid a monthly retainer of $28,750.00. This retainer was, in significant part, to compensate Plaintiff for production management and strategic services which include conducting weekly strategy meetings with Defendant.

40. Schedule A to the Agreement provided a detailed budget of the direct mail services that Plaintiff agreed to provide for Defendant.

41. Among other items, this budget set forth the parties' agreement regarding the cost of work to be performed by Plaintiff in both the acquisition of new donors for Defendant and the renewal of existing donors – each category further broken down by "control groups," "test groups" and "follow up." Further, this budget set forth the parties' agreement regarding the cost of work to be performed by Plaintiff for Defendant's "Research Partners."

42. As set forth on Schedule A to the Agreement, Plaintiff was not to exceed a certain cost per thousand pieces of direct mail performing each of Defendant's direct mailings, including acquisition, renewal and Research Partner mailings.

43. Plaintiff's first acquisition/control direct mailing on behalf of Defendant, on or about July 2002, was performed at a cost per thousand rate less than that agreed to by Plaintiff and Defendant.

44. Plaintiff's charged significantly more, on a cost per thousand basis, for Plaintiff's post-July 2002 direct mail services than allowed under Schedule A, specifically with respect to Plaintiff's "materials and mailshop" charges. Further, Plaintiff overcharged Defendant $419,025.00 for acquisition/control mailings as compared with the price agreed to in Schedule A. Plaintiff overcharged Defendant $17,721.00 for renewal/control mailings as compared with the price agreed to in Schedule A. Plaintiff overcharged Defendant $74,339.00 for renewal/follow up mailings as compared with the price agreed to in Schedule A. Plaintiff overcharged Defendant $15,780.00 for Research Partner mailings as compared with the price agreed to in Schedule A. In total, Plaintiff overcharged Defendant $526,865.00 (not including potential June 2003 overcharges subject to proof) as compared with the price agreed to in Schedule A.

45. At all times, Plaintiff's invoices did not delineate the particular cost of Plaintiff's direct mail services such that Defendant could determine the cost per thousand by Plaintiff for Plaintiff's direct mail services. In fact, it was not until Defendant conducted a detailed audit after the termination of the Agreement between the parties, did Defendant uncover Plaintiff's overcharges.

46. Defendant, without knowledge that Plaintiff was charging more than the price agreed upon in Schedule A, paid certain of Plaintiff's invoices.

47. On March 24, 2003, Defendant notified Plaintiff that Defendant was exercising its rights to terminate the Agreement effective June 30, 2003.

48. At some time shortly after March 24, 2003, after being notified that Defendant was exercising its right to terminate the Agreement, Plaintiff unilaterally cancelled strategy meetings with Defendant.

49. After termination of the Agreement and as part of a detailed audit, Defendant determined for the first time that – aside from the amounts billed for Plaintiff's July 2002 direct mailing – Plaintiff charged more than agreed upon in Schedule A for direct mail services.

## CAUSE OF ACTION

50. Defendant hereby incorporates the allegations made in paragraphs 28 to 49 above by reference.

51. Plaintiff and Defendant entered into an agreement effective March 25, 2002. This agreement contained valid and mutual consideration.

52. Defendant performed all conditions precedent to Plaintiff's performance under that agreement.

53. Plaintiff breached this agreement by, among other things, charging Defendant more than agreed to for performing certain direct mail services on Defendant's acquisition/control group mailings, renewal/control group mailings, renewal follow up mailings and Research Partner mailings.

54. Plaintiff's overcharging in this regard was disguised by Plaintiff's invoices which did not alert Defendant to the overcharging. As a result, Defendant paid certain of Plaintiff's invoices and paid Plaintiff more than that agreed to in Schedule A.

55. When Defendant determined that it had been overcharged in this manner by Plaintiff, Defendant demanded that Plaintiff reimburse Defendant.

56. Despite this demand, Plaintiff refused to reimburse Defendant.

57. Defendant was overcharged approximately $526,865.00 in this manner (not including potential June 2003 overcharges subject to proof).

## SECOND COUNTERCLAIM

### UNJUST ENRICHMENT

58. Defendant hereby incorporates the allegations made in paragraphs 28 to 57 above by reference.

59. Plaintiff overcharged Defendant for the acquisition/control group direct mail services, renewal/control group mailings, renewal follow up mailings, and Research Partner mailings provided to Defendant, in an amount subject to proof.

60. Plaintiff's overcharging in this regard was disguised by Plaintiff's invoices which did not alert Defendant to the overcharging. As a result, Defendant paid certain of Plaintiff's invoices.

61. When Defendant determined that it had been overcharged in this manner by Plaintiff, Defendant demanded that Plaintiff reimburse Defendant.

62. Despite this demand, Plaintiff refused to reimburse Defendant.

## THIRD COUNTERCLAIM

### ACCOUNT ANNEXED

63. Defendant hereby incorporates the allegations made in paragraphs 28 to 62 above by reference.

64. Plaintiff overcharged Defendant approximately $526,865.00 for direct mail services on Defendant's acquisition/control group mailings, renewal/control group mailings, renewal follow up mailings, and Research Partner mailings provided to Defendant (not including potential June 2003 overcharges subject to proof).

65. Because Plaintiff's invoices disguised the overcharging, Defendant paid Plaintiff this overcharged amount.

66. Defendant paid Plaintiff this money in such circumstance that, in equity, it should be returned to Defendant.

## FOURTH COUNTERCLAIM

## MASSACHUSETTS GENERAL LAW c. 93A

## UNFAIR AND DECEPTIVE TRADE PRACTICES

67. Defendant hereby incorporates the allegations made in paragraphs 28 to 66 above by reference.

68. Plaintiff is engaged in trade or commerce within the meaning of M.G.L. c. 93A.

69. By overcharging Defendant by means of invoices which did not disclose the overcharging, by refusing to reimburse Defendant for the overcharging, and in other means, Plaintiff has engaged in unfair and deceptive acts and practices, resulting in damages to Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Defendant American Diabetes Association prays that this Court:

1. Enter judgment dismissing Plaintiff's Complaint with prejudice;

2. Enter judgment in favor of Defendant and against Plaintiff on Defendant's First Counterclaim in the amount of $526,865.00 plus potential June 2003 overcharges subject to proof, together with interest from the date of demand;

3. Enter judgment in favor of Defendant and against Plaintiff on Defendant's Second Counterclaim in an amount subject to proof, together with interest from the date of demand;

4. Enter judgment in favor of Defendant and against Plaintiff on Defendant's Third Counterclaim in the amount of $526,865.00 plus potential June 2003 overcharges subject to proof, together with interest from the date of demand;

5. Enter judgment in favor of Defendant and against Plaintiff on Defendant's Fourth Counterclaim for not less than two and not more than three times Defendant's actual damages, together with interest, costs, and reasonable attorneys' fees for Plaintiff's willful or knowing use of unfair and deceptive acts and practices prohibited by M.G.L. c. 93A.

6. Award Defendant any additional relief that the Court deems just and appropriate.

Dated: February 19, 2004.        Respectfully submitted:

Robert Joy (BBO # 254820)
Michael Clarkson (BBO # 646680)
Mark M. Whitney (BBO # 637054)
**MORGAN, BROWN & JOY, LLP**
One Boston Place
Boston, MA 02108
(617) 523-6666 - phone
(617) 367-3125 - fax

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of Defendant's Answer to Plaintiff's Complaint and Defendant's Counterclaims was served on counsel for the Plaintiff, Kenneth H. Tatarian, 101 Arch Street, 9th Floor, Boston, MA 02110-1130, by hand delivery and upon the Clerk of the Court, United States District Court for the District of Massachusetts, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, MA 02210 also by hand delivery.

_____
Michael Clarkson (BBO # 646680)

Dated: 2/19/04